GRODSKY & OLECKI LLP
ALLEN B. GRODSKY (SBN 111064)
*allen@grodsky-olecki.com*
2001 Wilshire Blvd., Ste. 210
Santa Monica, California 90403
Telephone: (310) 315-3009
Facsimile:  (310) 315-1557

Attorneys for Defendant and
Counterclaimant Michelle Phan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRA INTERNATIONAL MUSIC PUBLISHING, LLC and ULTRA RECORDS, LLC, | Case No. 2:14-cv-05533-MMM-AGR |
| Plaintiffs, | **DEFENDANT AND COUNTERCLAIMANT MICHELLE PHAN'S COUNTERCLAIM** |
| v. | |
| MICHELLE PHAN, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |
| MICHELLE PHAN, | |
| Counterclaimant, | |
| v. | |
| ULTRA INTERNATIONAL MUSIC PUBLISHING, LLC and ULTRA RECORDS, LLC, | |
| Counterdefendants | |

Counterclaimant Michelle Phan ("Phan"), as and for her counterclaims against Ultra International Music Publishing, LLC and Ultra Records, LLC (collectively "Ultra"), alleges as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this judicial district pursuant to principles of ancillary venue.

## THE PARTIES

3. Phan is an individual residing in Los Angeles, California.

4. Phan is informed and believes, and thereon alleges, that Counterdefendant Ultra International Music Publishing, LLC is a New York limited liability company with its principal place of business in New York, New York.

5. Phan is informed and believes, and thereon alleges, that Counterdefendant Ultra Records, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

6. Phan is informed and believes, and thereon alleges, that at all times relevant hereto and in doing all that is alleged herein, each Counterdefendant was an agent or employee of the other Counterdefendants, acting within the scope of such agency or employment, directing, ratifying, or condoning the acts or omissions of these Counterdefendants alleged herein, and with the knowledge of each Counterdefendant attributable to the other Counterdefendant.

## GENERAL ALLEGATIONS

7. Phan is a beauty and lifestyle celebrity and entrepreneur with a global audience. She has approximately seven million subscribers to her YouTube channel,

placing her in the top 1% globally on this social media platform.  Phan receives income from YouTube derived from, among other things, advertisements that appear in association with her videos.

8.   Phan's YouTube videos feature demonstrations of make-up techniques and other beauty and lifestyle tips.  Her videos typically incorporate a broad range of music in the background for texture only; the music is never the focus of the video.

9.   Phan's videos are so popular, and her fan base is so dedicated, that she has been able to build a significant business through advertisements that appear in and around her videos, and through large-scale partnerships with major media companies and brand advertisers.

10.   For example, Phan has a contract with Endemol Beyond, a wholly-owned division of Endemol North America, part of the second largest independent television company in the world.  Phan also has a contract with L'Oreal Cosmetics, one of the world's largest cosmetics manufacturers.  These partnerships and others represent significant monetary commitments from Phan's partners and significant revenue to Phan.  They rely on Phan's ability to reach millions of potential consumers through her active YouTube channel, and depend upon Phan's YouTube channel remaining active and unencumbered.

11.   Due to the popularity of Phan's videos, record labels have paid Phan to use their artists' music as background in her YouTube videos and to include in the video a link to the iTunes store (which allows consumers to purchase the artist's music immediately).  Incorporating this iTunes link drives significant awareness of the artist's music, and significant traffic to the iTunes store.  Additionally, because rankings on the influential Billboard charts are based, in part, on data from YouTube (in addition to other sources), the significant viewership of Phan's videos helps record labels in their efforts to see their music rise up in the charts.

12.     Phan is informed and believes, and thereon alleges, that, like other record labels, Ultra too wanted Phan to use the music of artists on its label as background music in her YouTube videos along with an iTunes link.

13.     Beginning in July of 2009, Phan contacted Jason Kilgore, Ultra's Senior New Media Manager, and asked him for permission to use the music of Kaskade, one of Ultra's artists, in her YouTube videos.  In her electronic communication to Kilgore, Phan pointed out that she has several videos with more than 1,000,000 views (and some with over 2,000,000 views) and offered, in consideration for the right to use Kaskade's music in her videos, to credit the musician and include an iTunes purchase link in the video to make it easier for her subscribers to purchase Ultra's music.

14.     Kilgore wrote in response that he was aware of Phan, that Ultra was "really happy to see you supporting Kaskade," and that Ultra was "more than happy to let [Phan] use this content."

15.     Phan and Kilgore then began to discuss in writing how this agreement would work in connection with YouTube's "Content ID System."  The way YouTube's Content ID System worked was as follows:   Owners of copyrighted content (including record companies) would enter into an agreement with YouTube to use its Content ID System.  Phan is informed and believes, and thereon alleges, that Ultra entered into such a contract.  The owner of the content would then input all of its copyrighted material (in Ultra's case, songs) into YouTube's Content ID System, which would then search YouTube for matching content.  Every time the Content ID System identified a video containing content that matched the copyrighted material uploaded by a content owner, YouTube would put a "claim" on the YouTube video that contained matching content.

16.     In 2009, content owners had varying arrangements with YouTube regarding their recourse when the Content ID System triggered a claim based on a video containing copyrighted material uploaded by the owner.  For some owners, whenever the Content ID System triggered a claim, they would automatically receive a

-3-

specified share of any advertising revenue generated by the "claimed" video.  Phan is informed and believes, and thereon alleges, that Ultra had such an arrangement with YouTube.

17.     As further confirmation that Ultra agreed to allow Phan to use its music (in consideration for her crediting the musician and including an iTunes purchase link), Kilgore promised Phan in writing that whenever YouTube made a claim on one of Phan's videos using a Kaskade song controlled by Ultra, he would release that claim.

18.     Kilgore then offered to send, and did send, to Phan a promotional package of Ultra CDs featuring Kaskade and other artists.  He said he was sending the CDs "to show [Ultra's] thanks" for Phan using Kaskade's music in her YouTube videos.  Kilgore went on to say in an electronic communication sent a few days later that if there was *any other* music by Ultra artists that Phan liked, she should just let him know and he would send it to her.

19.     Only a few days later, Kilgore again thanked Phan for using another of Kaskade's songs in one of her YouTube videos and further stated:

> especially thanks for including the iTunes buy link in the description and a title bar at the beginning.  *This is the perfect way to incorporate any of our videos.*

(Emphasis added.)

20.     In August 2009, Phan and Kilgore further communicated regarding Phan's use of music by Ultra artists (including but not limited to Kaskade) in her YouTube videos.  Part of this came in the context of Phan asking Kilgore to release "claims" made by YouTube on behalf of Ultra in connection with Phan's use of music

\\
\\
\\
\\

-4-

by Ultra artists as background music in her videos.  On August 11, 2009, Kilgore stated the following to Phan:

> Also just let me know if this happens again in the future and you need me to release a claim.  This process happens automatically on youtube's back end, but I can release *whatever you may need*.

(Emphasis added.)

21.     The agreement between Ultra and Phan covered not only Kaskade, but all Ultra artists, as shown by Kilgore's January 2010 electronic communication to Phan in which he stated:   "If you use Ultra content please let me know when the video goes live so that I can make sure it doesn't get claimed."  Phan is informed and believes, and thereon alleges, that Kilgore had express and/or implied authorization to enter into this agreement on behalf of Ultra and/or that the agreement was ratified by Ultra.

22.     Over the next four years, Phan – relying on her agreement with Kilgore – continued to use master recordings and compositions of Ultra artists as background music in her videos and, whenever YouTube indicated that Ultra had made a claim, she would contact Kilgore or others at Ultra who would immediately release the claim (whether it related to music by Kaskade or any other Ultra artist).  This happened on multiple occasions.

23.     During this four year period, Ultra representatives offered suggestions to Phan as to particular tracks by Ultra artists that she should use as background music in her videos.  A number of Ultra representatives, including Ultra's Senior Director of Marketing and PR and Senior Manager of Interactive Marketing wrote to Phan that they loved what she was doing with the music by Ultra's artists. Other Ultra representatives sent Phan music tracks by Ultra artists that they suggested that she use in her YouTube videos, asking only that she post a link to purchase for her subscribers.  Ultra representatives posted comments to Phan's YouTube videos thanking Phan for helping to support Ultra artists.

24.     Consistent with her agreement with Ultra, whenever Phan incorporated music from Ultra artists in her videos, she credited the artist and included an iTunes purchase link.  Phan is informed and believes, and thereon alleges, that during the time her videos have been posted on YouTube, Ultra has received substantial financial benefit from purchases of music by Ultra artists through the iTunes link included by Phan in her videos.

25.     Phan has received tremendous support for her videos from Ultra artists, including Kaskade and Late Night Alumni.  These artists encouraged Phan and gave her permission – sometimes directly and sometimes through her representatives – to use their compositions and master recordings as background music in Phan's YouTube videos because the videos provided substantial and valuable publicity for them.  These artists sometimes provided Phan with digital copies of their songs to be used by Phan in her YouTube videos.

26.     On March 18, 2014, Ultra's General Counsel wrote to Phan and insisted for the first time that any use by Phan of music by Ultra's artists (including all the songs that Ultra had allowed Phan to use and which Phan had used for several years with Ultra's knowledge and approval) was "unauthorized" and demanded that she cease and desist from using any music from Ultra's artists.

27.     Phan is informed and believes, and thereon alleges, that in June and July of 2014, Ultra on three separate occasions, sent to YouTube takedown notices under the Digital Millennium Copyright Act ("DMCA") for twelve of Phan's videos containing music by Ultra artists even though Ultra had previously agreed that Phan could use music by Ultra artists in those videos.  In each of the cases, when Ultra sent the takedown notice, YouTube removed the challenged video, thereby cutting off any advertising revenue to Phan.  One of the videos subject to Ultra's takedown notice is a video that, years earlier, had been claimed by Ultra and then specifically released by Ultra once Phan notified Kilgore about it.

28.     Phan served DMCA counter-notifications for each of the takedown notices.  Phan is informed and believes, and thereon alleges, that if the filer of the takedown notice does not take action in response to the counter-notifications, the videos are reinstated.  Phan's videos that were subject to the first set of takedown notices were reinstated by YouTube within 21 days of the date those takedown notices were served, suggesting that Ultra did not respond to Phan's counter-notifications. The remaining challenged videos have not yet been reinstated.

## FIRST CLAIM FOR RELIEF

(For Declaratory Relief)

[Against All Counterdefendants]

29.     Phan hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 28 of this Counterclaim as if fully set forth herein.

30.     Attached hereto as Exhibit A is a non-exhaustive list of Phan's videos that use music by Ultra artists pursuant to Phan's express and/or implied agreement with Ultra (the "Authorized Videos").  For each of these videos, Phan has credited the artist and included an iTunes purchase link pursuant to the agreement.

31.     Phan is informed and believes, and thereon alleges, that Ultra now contends that (1) the Authorized Videos infringe Ultra's copyrights in and to various compositions and master recordings, and (2) if Ultra ever gave Phan permission to use those compositions and master recordings, Ultra has revoked that permission.

32.     Phan, on the other hand, contends that (1) she received from Ultra, Ultra's consent to use compositions and master recordings by Ultra artists in the Authorized Videos; (2) Ultra gave its consent pursuant to an express and/or implied agreement; (3) Ultra's consent was reiterated through several years of explicit support and coordination around Phan's use of the compositions and master recordings; (4) in exchange for these permissions, Phan provided bargained-for consideration to Ultra (e.g., credit to the artist, promotion of Ultra's music through its exposure to Phan's

-7-

considerable fan base, and a clearly posted and valuable link to iTunes, from where the viewer could immediately purchase the music); and (5) accordingly, under controlling law, Ultra cannot revoke its consent.

33.     There is an actual and substantial controversy between Plaintiff and Defendant as to whether Ultra has irrevocably licensed its music for the Authorized Videos.

## SECOND CLAIM FOR RELIEF

(Violation of Section 512(f) of Digital Millennium Copyright Act)

[Against All Counterdefendants]

34.     Phan hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 28 and 30 of this Counterclaim as if fully set forth herein.

35.     Phan is informed and believes, and thereon alleges, that the takedown notices sent to YouTube by Ultra were prepared and sent in bad faith, given Ultra's express and/or implied agreement with Phan that she could use Ultra's music in her videos in exchange for Phan's promotion of the Ultra music by using it as background in her videos, crediting the artist, and including an iTunes purchase link.

36.     Phan is informed and believes, and thereon alleges, that Ultra has knowingly materially misrepresented that Phan's use of compositions and master recordings by Ultra artists in Phan's videos is infringing, within the meaning of 17 U.S.C. § 512(f).

37.     As a direct and proximate result of Ultra's bad faith actions, Phan has been damaged in an amount to be proven at trial.  In addition, Phan is entitled to her reasonable attorney's fees prosecuting this claim.

\\

\\

\\

\\

## __THIRD CLAIM FOR RELIEF__

(Intentional Interference With Contract)

[Against All Counterdefendants]

38.    Phan hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 28, 30, and 35 through 36 of this Counterclaim as if fully set forth herein.

39.    Phan has a valid contract with YouTube, by which she has a YouTube channel, participates in the YouTube Partners program, and receives substantial sums of revenue related to YouTube-sold advertisements that appear on her YouTube channel.

40.    Phan is informed and believes, and thereon alleges, that Ultra is aware of Phan's contractual relationship with YouTube.

41.    Phan is informed and believes, and thereon alleges, that Ultra's bad faith conduct, as alleged above, was designed to disrupt, and has in fact disrupted, Phan's contractual relationship with YouTube.

42.    As a direct and proximate result of Ultra's bad faith actions, Phan has been damaged in an amount to be proven at trial.

43.    Phan is informed and believes, and thereon alleges, that Ultra's actions were taken with fraud, oppression, and malice.  Punitive damages in an amount according to proof therefore should be awarded to Phan and against Ultra.

WHEREFORE, Counterclaimant prays as follows:

1.    For a declaratory judgment that:

    A.    Ultra issued a non-revocable license to Phan for the Authorized Videos;

    B.    The Authorized Videos do not infringe on any Ultra copyright.

2.    For damages according to proof;

3.    For punitive damages according to proof;

4.      For costs and attorney's fees incurred herein;

5.      For such other and further relief as the Court deems just and proper.


Dated:  September 17, 2014                    GRODSKY & OLECKI LLP
                                              Allen B. Grodsky


                                              By  _____//  Allen B. Grodsky  //_____
                                                        Allen B. Grodsky

                                              Attorneys for Defendant and
                                              Counterclaimant Michelle Phan

-10-

## **DEMAND FOR JURY TRIAL**

Counterclaimant Michelle Phan hereby demands trial by jury of this matter.

Dated:  September 17, 2014

GRODSKY & OLECKI LLP
Allen B. Grodsky


By _____//  Allen B. Grodsky  //_____
          Allen B. Grodsky

Attorneys for Defendant and
Counterclaimant Michelle Phan